```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/10/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
   REGINALD BARNVILLE,

                                Plaintiff,

              -against-

   MIMOSA CAFE; LIDIVINA INFANTE,
MANAGER; ANTONIO LOPEZ, BOUNCER;
THE CITY OF NEW YORK; POLICE
OFFICER EDWIN FLOREZ, BADGE NO.
943244; POLICE OFFICER YOWELL
ROSARIO; SGT. GERALD LONG OF THE
34TH PRECINCT; ANTHONY HERNANDEZ,
ACCOUNT MANAGER FOR WORKFORCE 1;
and VOCATIONAL INSTRUCTION PROJECT
COMMUNITY SERVICES, INC.,

                               Defendants.
------------------------------------------------------------------X

1:14-CV-518-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

      Plaintiff Reginald Barnville brings a Section 1983 claim along with various state law claims against New York City, several police officers, a nightclub and its manager and bouncer, and a non-profit employment agency and its employee.  Barnville alleges that he was falsely arrested after the private client for whom he was providing personal security left a New York City nightclub without paying his tab.  As relevant to the instant motion, Barnville brings claims against the employment agency, Vocational Instruction Project Community Services, Inc. ("VIP"), and its account manager, Anthony Hernandez ("Hernandez") (collectively, "Defendants") for breach of a duty to investigate the private client; against VIP for negligent retention, training and hiring of Hernandez as an account manager; and against both VIP and Hernandez for malicious prosecution.

      VIP and Hernandez moved to dismiss all of Barnville's claims against them.  In response, Barnville withdrew his claims of malicious prosecution against VIP and Hernandez.  Declaration of John P. Grill ¶ 3.  Therefore, the Court does not reach the merits of that aspect of Defendants'

motion.  Hernandez also moved to dismiss a cross-claim brought by defendant Mimosa Cafe ("Mimosa") against him for contribution and indemnification.  This cross-claim was pled in Mimosa's answer to the original complaint.  *See* Dkt. No. 9.  However, after the Court gave Barnville leave to file the second amended complaint ("SAC") and instructed all of the defendants, including Mimosa, to file new answers or to otherwise respond to the SAC, Mimosa[1] did not plead this cross-claim in their answer to the SAC.  *See* Dkt. No. 45.  Mimosa did not submit any opposition in response to Hernandez's motion to dismiss the cross-claim.  Because an amended answer supersedes the original answer, and there is no indication here that the cross-claim remains pending, the Court finds it unnecessary to reach this aspect of Hernandez's motion.  *See Goldstone v. Payne,* 94 F.2d 855, 856 (2d Cir. 1938); *Armstrong v. Davis*, 275 F.3d 849, 878 n. 40 (9th Cir. 2001); *see also District of Columbia, Dept. of Public Works v. L.G. Industries, Inc.,* 758 A.2d 950, 957 n. 6 (D.C. 2000).

For the reasons that follow, the remaining aspects of VIP and Hernandez's motion are granted, and Barnville's claims against Hernandez and VIP are dismissed with prejudice.

**I.  BACKGROUND**

Barnville sought employment as a security guard through a career center run by VIP. Compl. ¶¶ 45, 51.  He met with Hernandez, an account manager, who assigned Barnville to provide security for non-party Enrique Sanchez.  Compl. ¶¶ 52, 54.  On the evening and early morning of March 9-10, 2013, Barnville and another guard, Daniel Coy, provided security for Sanchez while he was at Mimosa.  Compl. ¶¶ 54, 56.  After Sanchez left Mimosa without paying his large tab, Mimosa's manager and bouncer presented Barnville and Coy with the bill and told them they could not leave until it was paid.  Compl. ¶¶ 57-58.  Barnville called the police, but when they arrived, he was arrested.  Compl. ¶¶ 60-61.

---

[1] This answer was also filed on behalf of Mimosa's manager and bouncer, Lidivina Infante and Antonio Lopez. Barnville has filed a stipulation of dismissal with respect to the claims against Lopez. Dkt. No. 55.

Barnville comes to federal court through his Section 1983 claims against the City and the police officers, and he alleges various pendent state law claims including assault and battery, false arrest and imprisonment, malicious prosecution, abuse of process, negligent retention, training, and hiring, intentional infliction of emotional distress, and negligence.

## II. DISCUSSION

### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B. Negligent Hiring, Retention, and Training Claim (Count X against VIP)

Under New York law, where an employee acts within the scope of his or her employment, the employer cannot be held liable for a claim of negligent hiring, retention, or training. *See, e.g., Talavera v. Arbit,* 795 N.Y.S.2d 708, 708 (2d Dep't 2005) ("Generally, where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of *respondeat superior* and no claim may proceed against the employer for negligent hiring, retention, supervision or training."); *Weinberg v. Guttman Breast & Diagnostic Inst.,* 679 N.Y.S.2d 127, 128 (1st Dep't 1998) ("[P]laintiff's claims against the [defendant] alleging that it negligently supervised and retained its employees should have been dismissed . . . where, as here, an employee is acting within the scope of his or her employment . . . ."); *Gurevich v. City of New York,* No. 06 Civ.

3

1646 (GEL), 2008 WL 113775, at *6 (S.D.N.Y. Jan. 10, 2008) (where defendant conceded employees were acting within scope of employment, "plaintiff's claim for negligent hiring, training, and retention is barred as a matter of law"). The reason for this rule is that "if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training." *Karoon v. New York City Transit Authority,* 659 N.Y.S.2d 27, 29 (1st Dep't 1997). Here, Barnville's express allegation is that Hernandez was acting within the scope of his employment. Compl. ¶ 50.

Despite his own allegation, Barnville argues that it is nevertheless "premature" to dismiss this claim because "discovery may show" that Hernandez was, in fact, *not* acting within the scope of his employment. Pl. Br. at 11.[2] Further, Barnville's brief lists several factual scenarios that "may" or "might" have happened – such as the possibility that Hernandez might have been involved in a similar incident at another job or previously at VIP. Pl. Br. at 10. In the context of this motion, however, the Court is required to accept the facts alleged in plaintiff's Complaint as true. The complaint states that Hernandez was acting within the scope of his employment. Compl. ¶ 50. The Complaint is devoid of any alleged facts that support the alternative, hypothetical factual scenarios posited in Barnville's brief.

Barnville's argument that discovery might yield evidence that disproves the express factual assertions in his complaint strongly suggests that his complaint against VIP and Hernandez is a fishing expedition. While Barnville fails to cite to *Twombly*, *Iqbal*, or their progeny, the pleading standards articulated in those cases "do not countenance such expeditions." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 409 n.4 (S.D.N.Y. 2013); *see also Iqbal,* 556 U.S. at 678-79

---

[2] The Court notes that Barnville's argument raises a question as to whether or not Fed. R. Civ. P. 11(b)(3) – which requires an attorney to certify that to the best of his or her knowledge following a reasonable inquiry, a pleading's factual contentions have or will likely have evidentiary support – has been violated.

4

("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Twombly,* 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level" and "must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." (quotations and alterations omitted)).

Barnville also argues that a negligent hiring and training claim can proceed even if an employee is acting within the scope of his employment where the claim seeks punitive damages as a result of gross negligence. This exception is indeed recognized by New York law. *See, e.g., Coville v. Ryder Truck Rental,* 817 N.Y.S.2d 179, 180 (3d Dep't 2006); *Watson v. Strack,* 773 N.Y.S.2d 676, 676 (4th Dep't 2004); *Karoon,* 659 N.Y.S.2d at 29. However, Barnville's complaint fails to plead any facts to establish a claim of gross negligence – a theory that is not mentioned once in his complaint and that would require Barnville to plead facts that VIP's conduct was "so outrageous as to evince a high degree of moral turpitude . . . [so] as to imply a criminal indifference to civil obligations." *Henderson v. UPS,* 675 N.Y.S.2d 715, 716 (3d Dep't 1998) (quotations omitted).

Because Hernandez was acting within the scope of his employment and the complaint does not plead facts that support a claim of gross negligence, Barnville's negligent hiring, retention and training claims must be dismissed as a matter of law.

The Court must also note that the allegations in Barnville's complaint regarding the negligence of VIP in hiring, retaining, and training Hernandez are poorly, and insufficiently, pleaded. The complaint alleges that VIP was negligent because "it knew or should have known . . . that the defendant *police officers* . . . were not competent or capable, and/or exhibited vicious propensities" and "in that they failed to render such training [sic] would render the defendant *police officers* competent and capable, and/or ameliorate their vicious propensities." Compl. ¶ 149, 152 (emphasis

5

added). The complaint provides no facts that elucidate the alleged source of VIP's knowledge regarding, and obligation to train, the defendant police officers, and these allegations are nonsensical in light of the complaint's earlier allegations that VIP hired and trained Hernandez. Apart from those implausible references to the defendant police officers, the complaint does no more than recite the elements of the claim against VIP without any additional factual basis. Compl. ¶ 153. The complaint's labels and formulaic recitations are not sufficient to state a claim. *Twombly*, 550 U.S. at 555.

VIP's motion to dismiss the negligent hiring, retention, and training claim is granted. Leave to amend is denied. Barnville has already amended his complaint twice – including after VIP's motion was first filed in response to the original complaint – and chose to rely on the SAC rather than amend it to address the deficiencies identified by VIP's motion. *See* Rule 3 of the Court's Individual Rules of Practice in Civil Cases, *available at* http://www.nysd.uscourts.gov/judge/Woods. More importantly, Barnville has essentially admitted that he has no basis one way or the other to plead any facts that would constitute an actionable claim, and thus this Court concludes that amendment would be futile. *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile.").

### C. Negligence Claim (Count XII against VIP and Hernandez)

Barnville's claim for negligence against both VIP and Hernandez alleges that Sanchez was "not a true customer but a fraud." Compl. ¶ 166. Barnville alleges that Hernandez had a duty to investigate Sanchez to determine whether he was "legitimate" and that Hernandez breached this duty by failing to investigate Sanchez. Compl. ¶¶ 167-169. As a result of this breach, Barnville alleges, he was "harmed and sustained serious and permanent personal injuries" along with emotional distress. Compl. ¶ 170. Barnville alleges that VIP, as Hernandez's employer, is also liable for Hernandez's breach. Compl. ¶ 171.

Hernandez and VIP move to dismiss this claim on the ground that Barnville fails to state a claim because of a lack of proximate cause. In other words, they argue that even assuming Hernandez had a duty to investigate Sanchez and breached this duty, the injuries that Barnville alleges – his false arrest and imprisonment and his injuries sustained during the police officers' use of excessive force during the arrest, Compl. ¶¶ 61-66, 79, 86 – are too attenuated to state a claim of negligence against Hernandez and VIP as a matter of law. Def. Moving Br. at 11-12. For the reasons described below, the Court agrees with VIP and Hernandez.

While the question of proximate cause is typically a question for the finder of fact, the Court must satisfy itself in the first instance that a *prima facie* case has been established. *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 314 (1980); *Di Ponzio v. Riordan*, 89 N.Y.2d 578, 583 (1997); *see also Rivera v. City of New York*, 11 N.Y.2d 856, 857 (1962) ("Where the evidence as to the cause of the accident is undisputed, the question as to whether any act or omission of the defendant was the proximate cause thereof is one for the court and not for the jury.").

Proximate causation is a legal concept that means "that because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point." *Ventricelli v. Kinney Sys. Rent A Car, Inc.*, 45 N.Y.2d 950, 952 (1978) (quoting *Palsgraf v. Long Is. R.R. Co.*, 248 N.Y. 339, 352 (1928)). In analyzing this question, as relevant here, courts look to "whether the accident was within the reasonably foreseeable risks." *Di Ponzio*, 89 N.Y.2d at 583. "[A]lthough virtually every untoward consequence can theoretically be foreseen with the wisdom born of the event, the law draws a line between remote possibilities and those that are reasonably foreseeable because no person can be expected to guard against harm from events which are so unlikely to occur that the risk would commonly be disregarded." *Id.* (citations, quotations, and alterations omitted); *see also Lee v. New York City Hous. Auth.*, 803 N.Y.S.2d 538, 542 (1st Dep't 2005)

7

("The law draws a sharp distinction between a condition that merely sets the occasion for or facilitates an accident and an act that is a proximate cause of the accident.").

Although a plaintiff need not demonstrate "the foreseeability of the precise manner in which the accident occurred or the precise type of harm produced," "where an individual breaches a legal duty and thereby causes an occurrence that is within the class of foreseeable hazards that the duty exists to prevent, the individual may be held liable, even though the harm may have been brought about in an unexpected way. On the other hand, no liability will result when the occurrence is not one that is normally associated with such hazards." *Di Ponzio*, 89 N.Y.2d at 584.

The duty allegedly violated by VIP and Hernandez was the failure to investigate Sanchez and whether he was a "legitimate" client. Compl. ¶¶ 167-169. Although Barnville does not elaborate on what he means by "legitimate" client, presumably, an investigation might (or might not) have revealed any number of red flags, such as whether Sanchez had failed to pay security guards in the past, had failed to pay tabs while under security services, or whether Sanchez had a history of violence or trouble with law enforcement. But no search could have revealed a risk of the injury Barnville allegedly incurred here – a violation of his constitutional rights by the police following Sanchez's failure to pay a bar tab. Constitutional violations by third-party police officers are not within the class of foreseeable hazards that would result from a failure to investigate a client who needs private security. Even if an investigation of Sanchez would have revealed a history of incidents with law enforcement, that Barnville – the security guard – would be subject to constitutional violations of an arrest without probable cause, excessive force, and false imprisonment are extraordinary, unforeseeable, and far removed risks that do not flow from any failure to investigate.

Moreover, Barnville's alleged injuries were the result of intervening acts – alleged constitutional violations by New York City police officers. Specifically, Barnville alleges he was

8

injured when he was arrested without probable cause, was subject to excessive force, and was falsely imprisoned. Compl. ¶¶ 61-66, 79, 86. However, "[c]ourts have repeatedly held that where the acts of the injured party or a third party intervene between the defendant's conduct and the plaintiff's injury and the intervening act is independent of the defendant's conduct, the causal connection is broken." *Lee*, 803 N.Y.S.2d at 543. Third-party acts do not automatically sever the causal connection, but instead, this inquiry is also a question of foreseeability. *Derdiarian*, 51 N.Y.2d at 315. "[L]iability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence." *Id.* In cases that involve extraordinary, unforeseeable, or independent or far removed acts "which operate upon but do not flow from the original negligence," such intervening acts may be held to break the chain of causation as a matter of law. *Id.* The Court cannot conclude that unconstitutional acts by police officers are "a normal or forseeable consequence" of the Defendants' alleged negligence in this case.

Barnville argues that "it is possible that if the defendant H[ernandez] had been more careful in investigating Mr. Sanchez he would never have sent plaintiff to work security for him, and the incident in question would not have occurred." Pl. Br. at 15. It is of course true that had Barnville never been assigned to work with Sanchez, the events of March 9-10, 2013 would not have occurred. But New York courts have repeatedly rejected such an argument, because liability cannot lie where an act merely sets the stage for, but does not proximately cause, an injury. *Di Ponzio*, 89 N.Y.2d at 583; *Lee*, 803 N.Y.S.2d at 542.

Barnville also relies on *Greenfield v. Suzuki Motor Co. Ltd.*, 776 F. Supp. 698 (E.D.N.Y. 1991) to argue that his allegations are sufficient. In *Greenfield*, the plaintiff and his wife were in their boat when the engine stalled. *Id.* at 700. During his attempt to restart the stalled engine, the anchor line became entangled in the engine, and when plaintiff tried to cut the line, he fell into the water. *Id.* His wife drowned when the boat capsized as she tried to rescue plaintiff. *Id.* The court found that

9

proximate cause was pled because "the general risk of a boating mishap and drowning were foreseeable," even if the precise manner in which the boating accident occurred was not. *Id.* at 701. Not so here, where the general risk of a constitutional injury was completely unforeseeable. In fact, the New York Court of Appeals has found risks unforeseeable in circumstances much more closely linked than the instant case. *See, e.g., Di Ponzio*, 89 N.Y.2d at 585 (finding risk that plaintiff would be trapped between vehicles when an unattended vehicle rolled backwards at a gas station was "not among the hazards that are naturally associated with leaving a car engine running during the operation of a gas pump" and was "at most, a remote possibility"); *Ventricelli*, 45 N.Y.2d at 952 (finding risk that plaintiff would be struck by a car while he was standing behind his car attempting to close a faulty trunk lid was not foreseeable).

For the reasons discussed, the Court concludes that Barnville cannot plead proximate cause as a matter of law, and VIP and Hernandez's motion to dismiss the negligence claim is granted. As already noted, Barnville has already amended his complaint twice and chose to rely on it rather than amend it in the face of the instant motion. Moreover, amendment would be futile in light of the Court's ruling that the injuries Barnville complains of were not proximately caused by VIP and Hernandez; no further allegations would change that legal conclusion. Because amendment would be futile, leave to amend is denied. *Ellis*, 336 F.3d at 127.

### III. CONCLUSION

For the foregoing reasons, VIP and Hernandez's motion to dismiss is granted and the claims against them are dismissed with prejudice. The Clerk of Court is directed to close the pending motion at Dkt. No. 38 and terminate VIP and Hernandez as parties in this case.

Finally, Barnville also requests sanctions on the ground that VIP and Hernandez's motion to dismiss is frivolous. His motion does not comply with the procedures set forth in Fed. R. Civ. P.

11(c)(2), *see Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012), and is in any event denied on the merits in light of the Court's decision.

The next case management conference in this matter is set for September 5, 2014 at 9:30 a.m. A joint status letter from all parties that remain in the case shall be submitted via ECF by August 29, 2014.

SO ORDERED.

Dated: July 10, 2014  
New York, New York

_____
GREGORY H. WOODS  
United States District Judge